Commonwealth *v.* Kenney, Appellant.

Argued April 18, 1972.   Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Abraham J. Brem Levy,* with him *John F. X. Fenerty,* for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *T. Michael Mather,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, November 30, 1972:
This is an appeal from the judgment of sentence imposed by the court on the appellant, George Kenney,

following his conviction by a jury of murder in the first degree. Appellant was sentenced to life imprisonment as the jury directed.

The record discloses the following pertinent facts:

On May 4, 1968, the state liquor store on Torresdale Avenue in Philadelphia was robbed by one individual. During the course of the felony, one of the three clerks present in the store, John Bucykowski, was shot by the felon and shortly thereafter died as a result of a wound in the neck.

An investigation was undertaken which led to the apprehension of one Barry Marabel (for the factual background of the arrest of Marabel and his complicity in the crime, see *Commonwealth v. Marabel*, 445 Pa. 435, 283 A. 2d 285 (1971)). Marabel confessed on May 17th to being involved in the robbery-murder and implicated appellant as the individual who had committed the robbery and shot Bucykowski. Appellant was immediately arrested and gave a full confession to the crimes.

At trial the Commonwealth introduced the confession of appellant,[1] as well as the testimony of the following witnesses. Joseph E. McAnany, one of the clerks present during the robbery, was called and he recounted the events leading up to the fatal shooting. He unequivocally identified appellant as the individual who had committed the robbery-murder, and stated that shortly before 9:00 p.m. on the night in question appellant entered the store and demanded the proceeds from the day's sales, as well as the money which personally belonged to the store clerks. He testified that when Bucykowski did not immediately respond to appellant's demand he was shot. One Charles Dunn, the co-manager of the store, on duty during the crime was

---

[1] A pretrial suppression hearing was held and a motion to suppress the confession as involuntary was denied.

also called to the witness stand and also unequivocally identified appellant as the man who had committed the crimes.

The Commonwealth called Marie Ann Capille, a young girl, who resides in the house immediately adjacent to the liquor store. Miss Capille stated shortly before 9:00 p.m. on May 4th a red car pulled up in front of her home and a man got out and went into the liquor store. She testified that shortly thereafter this same man came running out of the store and when he was in front of her house he stopped, and looked directly at her, then got into the car and it sped away. She identified this man as appellant Kenney. A Barbara Watkins was also called and she stated that she, two other individuals, and appellant drove to the liquor store just before 9:00 p.m. on the night in question, however, she did not testify that she saw appellant enter the store. The Commonwealth also produced the murder weapon which it connected to appellant, as well as the stolen wallets of the clerks which, through evidence, were also placed in the possession of appellant. Based on this evidence, the jury returned a verdict of murder in the first degree.

The appellant first argues his warrantless arrest on May 17th was unlawful, thus his confession was involuntary and inadmissible as evidence at trial.

The law is clear that a warrantless arrest for robbery can be constitutionally valid if based on probable cause.[2] Initially, in this regard, appellant asserts it is

---

[2] See generally *McCray v. Illinois*, 386 U.S. 300, 87 S. Ct. 1056 (1967); *Ker v. California*, 374 U.S. 23, 83 S. Ct. 1623 (1963); *Commonwealth v. Carter*, 444 Pa. 405, 282 A. 2d 375 (1971); *Commonwealth v. Murray*, 437 Pa. 326, 263 A. 2d 886 (1970); *Commonwealth v. Marino*, 435 Pa. 245, 255 A. 2d 911 (1969); *Commonwealth v. Brayboy*, 431 Pa. 365, 246 A. 2d 675 (1968); *Commonwealth v. Bishop*, 425 Pa. 175, 228 A. 2d 661 (1967).

essential the arresting officer have information within his own knowledge which constitutes probable cause. The facts which give rise to this argument can briefly be stated as follows: Lieutenant Patterson was the officer in charge of the entire investigation. Through the interrogation of Barry Marabel he learned appellant was the individual who allegedly committed the robbery-murder. Based on this information he dispatched Detective Molinari without a warrant to arrest appellant at his home. It is alleged that the record of the suppression hearing does not support a finding that Detective Molinari had knowledge of facts which would have established probable cause for arrest, thus the arrest is unlawful. In the context of the present facts we do not believe it was necessary for the arresting officer to have knowledge of the information which supported the probable cause for arrest. The operative question is whether Lieutenant Patterson, the officer who ordered the arrest, had sufficient information to support a finding of probable cause.[3] Detective Molinari was merely carrying out the order of his supe-

---

[3] The United States Supreme Court in the case of *Whiteley v. Warden*, 401 U.S. 560, 91 S. Ct. 1031 (1971), used the following language which supports this conclusion:

"To prevent arresting officers from acting on the assumption that fellow officers who call upon them to make an arrest have probable cause for believing the arrestees are perpetrators of a crime would, it is argued, unduly hamper law enforcement.

"We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." Id at 568, 91 S. Ct. at 1037. See also *United States v. Stratton*, 453 F. 2d 36

rior officer. He did not undertake on his own initiative to arrest appellant, rather it was on the command of his superior that he made the arrest. Hence, the question for discussion is whether Lieutenant Patterson had knowledge of facts and circumstances sufficient to constitute probable cause to arrest.

Probable cause is defined as facts and circumstances within the knowledge of the authorities of which they have reasonable trustworthy information, which would warrant a man of reasonable caution to believe that the suspect had committed a crime.[4] In the present case, the probable cause for the warrantless arrest can be found in the information received by Lieutenant Patterson from Barry Marabel's confession, wherein he implicated appellant as the individual who committed the crime. The confession of a co-defendant which implicates the suspect will supply the probable cause for a warrantless arrest. Cf. *Commonwealth v. Matthews,* 446 Pa. 65, 285 A. 2d 510 (1971).[5]

In light of our finding that the arrest was lawful, we conclude that the suppression judge was correct in finding the confession voluntary and therefore admissible. Moreover, even assuming arguendo that the arrest was unlawful, there is absolutely no evidence on the record to indicate the confession was anything but voluntary. Appellant was taken to police headquarters, immediately warned of his rights and knowingly, intel-

---

(8th Cir. 1972) ; *White v. United States,* 448 F. 2d 250 (8th Cir. 1971) ; *Wood v. Crouse,* 436 F. 2d 1077 (10th Cir. 1971) ; *Stassi v. United States,* 410 F. 2d 946 (5th Cir. 1969) ; *United States v. Romero,* 249 F. 2d 371 (2d Cir. 1957).

[4] See generally *Commonwealth v. Marino* and *Commonwealth v. Bishop,* supra n. 2.

[5] See also *United States v. Harris,* 403 U.S. 573, 91 S. Ct. 2075 (1971) ; *Hill v. California,* 401 U.S. 797, 91 S. Ct. 1106 (1971) ; *Commonwealth v. White,* 447 Pa. 331, 290 A. 2d 246 (1972) ; *United States ex rel. DiRienzo v. Yeager,* 443 F. 2d 228 (3d Cir. 1971).

ligently and voluntarily waived those rights. There is no evidence that he was tricked, cajoled, or threatened either by physical force or psychological techniques or that the confession was the exploitation of the unlawful arrest (assuming there was one). See generally *Commonwealth v. Mitchell,* 445 Pa. 461, 285 A. 2d 93 (1971).[6]

Also with respect to the voluntariness of the confession, appellant alleges the trial judge improperly submitted the issue to the jury, since he failed to submit the lawfulness of the arrest for the jury to consider in this regard. The lawfulness of the arrest was not a jury question. The jury was properly instructed on the elements of voluntariness of a confession and instructed to totally disregard the confession if they found it were involuntary. We find no error on the part of the trial judge.

It is next asserted the trial judge erred in refusing to charge the jury on voluntary manslaughter and also in failing to submit to the jury such a finding as a possible verdict. The law is clear where a defendant is indicted for murder, he can be convicted of voluntary manslaughter, see *Commonwealth v. Dennis,* 433 Pa. 525, 252 A. 2d 671 (1969); however, it is equally clear where there is absolutely no evidence of the elements of manslaughter[7] it is not error for the trial judge to refuse to charge on this point or submit manslaughter as a possible verdict. See *Commonwealth v. Matthews,* supra.[8] In the instant case, there was absolutely no

---

[6] See also *Commonwealth v. Jacobs,* 445 Pa. 364, 284 A. 2d 717 (1971); *Commonwealth v. Bennett,* 445 Pa. 8, 282 A. 2d 276 (1971); *Commonwealth v. Marabel,* supra.

[7] See *Commonwealth v. Barnosky,* 436 Pa. 59, 258 A. 2d 512 (1969) (sufficient cause of provocation, a state of rage or passion, and no time to cool).

[8] See *Commonwealth v. LaRue,* 381 Pa. 113, 112 A. 2d 362 (1955); *Commonwealth v. Flax,* 331 Pa. 145, 200 A. 632 (1938);

evidence of the elements of manslaughter. The Commonwealth through its evidence established this was clearly a felony murder case, where the appellant in the furtherance of the felony, with no cause or provocation, shot the victim solely to carry out the crime. The defense never once through cross-examination of witnesses, or through its own evidence attempted to show the elements of voluntary manslaughter. In a case of this nature where there is not the slightest proof of manslaughter we see no need to charge the jury on this point, and no error in refusing to so charge. If and when the presence of these elements enter the case, regardless of how slight a basis, then it becomes the duty of the trial judge to charge on manslaughter, but up until that time the trial judge does not commit reversible error by refusing to charge on this point.

The appellant next complains he was prejudiced by the judge's supplemental charge which the jury requested on first and second degree murder. We have reviewed this charge and find no reversible error.

Lastly, the appellant challenges the selection of the jury and the manner in which it reached the penalty it imposed on appellant. First, although admitting that *Witherspoon v. Illinois,* 391 U.S. 510, 88 S. Ct. 1770 (1968), does not control the case since the penalty returned by the jury was life imprisonment, see *Bumper v. North Carolina,* 391 U.S. 543, 88 S. Ct. 1788 (1968), appellant asserts the practice of questioning the jurors on their ability to return the death penalty, makes for the selection of a jury which is prosecution prone. We considered and rejected this contention in *Commonwealth v. Speller,* 445 Pa. 32, 282 A. 2d 26 (1971), and

*Commonwealth v. McMurray,* 198 Pa. 51, 47 A. 952 (1901) ; *Commonwealth v. Crossmire,* 156 Pa. 304, 27 A. 40 (1893) ; *Clark v. Commonwealth,* 123 Pa. 555, 16 A. 795 (1889) ; *Brown v. Commonwealth,* 76 Pa. 319 (1874).

*Commonwealth v. Roach,* 444 Pa. 368, 282 A. 2d 382 (1971), and find nothing on the record of the present case to dictate a contrary ruling than that reached in those two cases. Second, appellant argues his constitutional rights were violated because the jury had absolute discretion on the issue of the appropriate penalty. We have once before considered and rejected this issue in *Commonwealth v. Matthews,* supra, and we stand on our decision in that case. See also *McGautha v. California,* 402 U.S. 183, 91 S. Ct. 1454 (1971).

Judgment affirmed.

---

Dissenting Opinion by Mr. Justice Roberts:

"Our scheme of ordered liberty is based like the common law, on enlightened and uniformly applied legal principle, not on ad hoc notions of what is right or wrong in a particular case." J. Harlan, Thoughts at a Dedication: Keeping the Judicial Function in Balance, in the Evolution of a Judicial Philosophy 289, 291-92 (D. Shapiro ed., 1969).

These timely words, unfortunately, have here been ignored by the majority. Instead the majority today eschews a "uniformly applied legal principle" in favor of "ad hoc notions," and I must dissent.

This Court is in complete agreement that in any murder prosecution the jury *may always* return, and the court *must accept,* a verdict of voluntary manslaughter.[1] Yet the majority advances the view that

---

[1] See *Commonwealth v. Hill,* 444 Pa. 323, 281 A. 2d 859 (1971); *Commonwealth v. Hoffman,* 439 Pa. 348, 266 A. 2d 726 (1970); *Commonwealth v. Harry,* 437 Pa. 532, 264 A. 2d 402 (1970); *Commonwealth v. Dennis,* 433 Pa. 525, 252 A. 2d 671 (1969); *Commonwealth v. Cooney,* 431 Pa. 153, 244 A. 2d 651 (1968); *Commonwealth v. Pavillard,* 421 Pa. 571, 220 A. 2d 807 (1966); *Commonwealth v. Frazier,* 420 Pa. 209, 216 A. 2d 337 (1966); *Commonwealth v. Frazier,* 411 Pa. 195, 191 A. 2d 369 (1963); *Commonwealth v. Moore,* 398 Pa. 198, 157 A. 2d 65 (1959); *Commonwealth*

when there is no factual basis to support a finding of voluntary manslaughter, the trial court *may in its discretion* refuse to charge on voluntary manslaughter, even when so requested, thus effectively keeping the jury unaware of its power. In so holding the majority has completely ignored the "uniformly applied legal principle" that a jury may always, in any murder prosecution, return a verdict of voluntary manslaughter. Instead the majority has permitted the trial court's decision on whether to charge on voluntary manslaughter to be nothing more than an "ad hoc notion."

The principle that a jury in a murder prosecution may return a verdict of voluntary manslaughter that must be accepted by the court has two distinct underpinnings. It has long been held that because voluntary manslaughter is a lesser included offense of the crime of murder, "under an indictment charging murder, defendant may be convicted of voluntary manslaughter . . . though it may clearly appear from the evidence that defendant was in fact guilty of a higher grade. . . ." *Commonwealth v. Arcuroso,* 283 Pa. 84, 87, 128 Atl. 668, 670 (1925). Similarly, several cases of this Court have intimated that the jury's power to return a verdict of voluntary manslaughter is an exercise of the jury's dispensing power. *Commonwealth v. Hill,* 444 Pa. 323, 327, 281 A. 2d 859, 861 (1971); *Commonwealth v. Hoffman,* 439 Pa. 348, 358, 266 A. 2d 726, 731 (1970); *Commonwealth v. Moore,* 398 Pa. 198, 208, 157 A. 2d 65, 71 (1959); *Commonwealth v. Steele,* 362 Pa. 427, 430, 66 A. 2d 825, 827 (1949).

It would surely be illogical to hold as our cases do that "the jury may find the accused guilty of the less

*v. Nelson,* 396 Pa. 359, 152 A. 2d 913 (1959); *Commonwealth v. Steele,* 362 Pa. 427, 66 A. 2d 825 (1949); *Commonwealth v. Arcuroso,* 283 Pa. 84, 128 Atl. 668 (1925); *Commonwealth v. Kellyon,* 278 Pa. 59, 122 Atl. 166 (1923); *Commonwealth v. Gable,* 7 S. & R. 423 (1821).

offense [voluntary manslaughter]"[2] and yet deny the jury an instruction as to its power to return such a verdict. It would indeed be anomalous to recognize the jury's dispensing power in a murder prosecution, and yet deliberately withhold from the jury knowledge of that power.[3] This anomaly the majority today elevates to a legal principle of criminal justice.

Nor should the majority shield itself from the injustices created by its holding today. Some trial courts in this Commonwealth *always* give a charge on voluntary manslaughter, whether requested or not, regardless of whether a factual basis for such a finding exists. Other trial courts *never* give a charge on voluntary manslaughter, even when so requested, unless a factual basis for such a charge exists. This unequal treatment of defendants otherwise similarly situated, as Mr. Justice POMEROY has observed, has no "rational basis,"[4] and is clearly violative of the equal protection clause.

The effect of the majority's present disposition is to leave our trial courts with absolutely no standards or guidance on the crucial question of whether to charge the jury on voluntary manslaughter when there is no evidence to support such a finding. Indeed all that emerges from the majority's disposition here is that trial courts are to use an "ad hoc notion of what is right or wrong."

I dissent.

Mr. Justice POMEROY and Mr. Justice MANDERINO join in this dissenting opinion.

---

[2] *Commonwealth v. Arcuroso*, 283 Pa. 84, 87, 128 Atl. 668, 670 (1925).

[3] See *United States v. Dougherty*,    F. 2d    (D.C. Cir. 1972) (Judge BAZELON, concurring opinion).

[4] *Commonwealth v. Matthews*, 446 Pa. 65, 81-82, 285 A. 2d 510, 518 (1971) (Mr. Justice POMEROY, dissenting opinion, in which Mr. Justice ROBERTS joined).