STATE of Delaware, Plaintiff Below,
Appellant/Cross-Appellee

v.

John A. COOLEY, Defendant Below,
Appellee/Cross-Appellant

Supreme Court of Delaware.

Submitted: Dec. 10, 1982.

Decided: Feb. 7, 1983.

Ralph K. Durstein, III, Deputy Atty. Gen., Wilmington, for appellant/cross-appellee.

John E. Babiarz, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, for appellee/cross-appellant.

Before QUILLEN, HORSEY, and MOORE, JJ.

MOORE, Justice:

Pursuant to 10 *Del.C.* § 9902,[1] the State appeals the pre-trial suppression of intoxim-

---

1. 10 *Del.C.* § 9902(a) gives the State the right to appeal when an indictment or information is dismissed or a conviction vacated because of the invalidity or construction of the underlying statute or because of lack of jurisdiction.

Since the State is appealing the suppression of evidence, subsections b and c are applicable:

(b) When any order is entered before trial in any court suppressing or excluding substantial and material evidence, the court,

eter test results which were to be used in the prosecution of John A. Cooley for criminally negligent homicide (11 *Del.C.* § 631). The State contends that even though Cooley's initial arrest for driving a vehicle under the influence of intoxicating liquor (21 *Del.C.* § 4177) violated statutory arrest rules, compliance with those rules is immaterial when the investigation yields evidence amounting to probable cause to later arrest Cooley for homicide. The State then argues that probable cause existed to detain Cooley for investigation, including administering the intoximeter test. We disagree since there is no evidence that the arresting officer or the officer at the scene who directed that Cooley be arrested had communicated with the officer who knew facts constituting probable cause for Cooley's arrest or detention. In a cross-appeal, Cooley argues that the trial court exceeded the scope of instructions contained in the earlier remand of this case and that the trial court incorrectly denied his motion to dismiss the indictment because of prosecutorial delay. We hold that in appeals to this Court pursuant to 10 *Del.C.* § 9902, this Court has no jurisdiction to entertain Cooley's appeal, and it will be dismissed.

I.

Shortly after midnight on August 19, 1980, Cooley was involved in a two-car accident in which the driver of the other car was killed. State Trooper Shamany, who first arrived at the scene, soon identified Cooley as the driver of one of the cars. Shamany detected a strong smell of alcohol on Cooley's breath, and Cooley appeared to be incoherent. Shamany helped Cooley to the police car, and he remained in the car for a short period of time. However, Shamany did not tell Cooley that he was under arrest or being detained pending investigation of the accident. In fact, the actual cause of the accident was not determined for several hours.

In the meantime, additional troopers had arrived at the crash scene to aid in the investigation and direct traffic. Witnesses were identified and directed to the nearby state police troop. Two witnesses volunteered to take Cooley with them to the troop, and Shamany accepted their offer. State Police Corporal McDerby, one of the officers who later arrived at the scene, established radio contact with the troop. Acting on radio conversations with McDerby, the desk sergeant at the troop, Sergeant Thompson, arrested Cooley for driving a vehicle while under the influence of intoxicating liquor (DUI) when Cooley arrived at the troop. Thompson administered the intoximeter test to Cooley about ten minutes later and obtained test results showing a blood alcohol concentration of .25 percent, substantially over the .10 percent maximum contained in the DUI statute. After the test, Cooley asked for hospital treatment of minor injuries. He was taken to the hospital, and upon his return to the troop a few hours later, he was arrested for criminally negligent homicide. The grand jury subsequently indicted him for this offense.

After indictment Cooley challenged the DUI arrest and moved to suppress the intoximeter test results obtained on the basis of that charge. The State contended that any irregularity in the DUI arrest was irrelevant since the police had probable cause to arrest Cooley for homicide when the test was given. However, in the trial court the State did not present evidence of probable cause. The trial judge denied the suppression motion, but ordered a new hearing to permit the State to offer such evidence.

upon certification by the Attorney General that the evidence is essential to the prosecution of the case, shall dismiss the complaint, indictment or information or any count thereof to the proof of which the evidence suppressed or excluded is essential. Upon ordering the complaint, indictment or information or any count thereof dismissed pursuant to the Attorney General's certification, the reasons of the dismissal shall be set forth in the order entered upon the record.

(c) The State shall have an absolute right of appeal to an appellate court from an order entered pursuant to subsection (b) of this section and if the appellate court upon review of the order suppressing evidence shall reverse the dismissal, the defendant may be subjected to trial.

At the second hearing, the State's only evidence was directed to the issue of probable cause for the DUI arrest. Ruling from the bench, the trial judge held that only Trooper Shamany had probable cause to make the DUI arrest, and Sergeant Thompson had no knowledge of any of Shamany's observations which had led to a conclusion of probable cause. This disturbed the trial judge, but he nevertheless denied the suppression motion. Cooley moved for reargument, asserting non-compliance with the misdemeanor arrest statutes, 11 *Del.C.* § 1904 and 21 *Del.C.* § 701.[2] This time the trial judge agreed, holding that Cooley had actually been arrested by Thompson at the troop, not by Shamany at the scene, as the arrest statutes required. The trial judge also concluded that though Shamany had information justifying Cooley's arrest, those facts had not been given to either McDerby or Thompson, and Thompson, therefore, had no probable cause to arrest Cooley or to administer the intoximeter test. The judge then ordered suppression of the test results.

After this ruling the State certified, pursuant to 10 *Del.C.* § 9902, that the suppressed evidence was essential to Cooley's prosecution. The case was then dismissed, and the State appealed the suppression order to this Court, as provided by section 9902. In an unpublished order, we reversed and remanded, instructing the Superior Court to determine whether probable cause existed, prior to administering the intoximeter test, to arrest Cooley on the homicide charge. In accord with our remand, another hearing was held. The State conceded at that hearing that there was no probable cause to support the homicide prior to administering the intoximeter test. The trial court reaffirmed its earlier findings, and the test results were again suppressed. The State, following the procedure in 10 *Del.C.* § 9902, filed this appeal.

## II.

In addition to its concession that no probable cause existed to arrest Cooley for a felony when the intoximeter test was given, the State also admits that the DUI arrest was invalid under 11 *Del.C.* § 1904(a) and 21 *Del.C.* § 701(b), the misdemeanor arrest statutes. Because Cooley's initial arrest for DUI was invalid, the test results could not be used in a DUI prosecution. *Bertomeu v. State,* Del.Supr., 310 A.2d 865 (1973); *State v. Hodgson,* Del.Super., 200 A.2d 567 (1964). The State contends, however, that the test was properly administered since the police had probable cause to detain Cooley and give him the test as part of their investigation of the accident. According to the State, there need not be probable cause to arrest but "merely sufficient probable cause to justify the test".

The State has correctly articulated the standard which is to be applied here. The United States Supreme Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), allowed a police officer to obtain a blood sample for purposes of determining blood alcohol levels when there was probable cause to arrest the suspect for DUI. More generally, when a person is detained for investigation, as the State argues Cooley was, the police must have probable cause for detaining him. *See Dunaway. v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).[3]

---

**2.** The misdemeanor arrest provision [11 *Del.C.* § 1904(a)] states in relevant part:

   (a) An arrest by a peace officer without a warrant for a misdemeanor is lawful whenever he has reasonable ground to believe that the person to be arrested has committed a misdemeanor

   (1) In his presence ...

A warrantless arrest "at the scene of a motor vehicle accident" is authorized if the police officer "has reasonable and probable cause to

believe, based upon personal investigation which may include information obtained from eyewitnesses, that a violation has been committed by any person then and there present ...." 21 *Del.C.* § 701(b).

**3.** Delaware has adopted a statute which authorizes brief detention for identification purposes of a person who is "abroad" or in a public place when the police officer "has reasonable ground to suspect [that the person] is commit-

According to the State, when Thompson arrested Cooley, he was relying on the directions of McDerby, who had radioed him from the scene. Recognizing that McDerby did not have knowledge of sufficient facts amounting to probable cause, and only Shamany had that knowledge, the State argues that what all of the officers on the scene knew as a group was enough to establish probable cause. Cooley contends that in order for McDerby's directions to justify Thompson's actions at the troop, McDerby himself had to possess all the information required to show probable cause.

■ We disagree with both assertions. Thompson was entitled to rely on information relayed to him through official channels when arresting Cooley. *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971); *State v. Duffy,* R.I.Supr., 112 R.I. 276, 308 A.2d 796, 799 (1973). *See Commonwealth v. Whitson,* Pa. Supr., 461 Pa. 101, 334 A.2d 653, 654 (1975); *Commonwealth v. Kenney,* Pa.Supr., 449 Pa. 562, 297 A.2d 794, 796 (1972). The arresting officer himself need not be apprised of the underlying circumstances which gave rise to a conclusion of probable cause. *State v. Schoenbneelt,* Conn.Supr., 171 Conn. 119, 368 A.2d 117, 119 (1976). Instead, he can act in the belief that his fellow officer's judgment is correct. *See Whiteley,* 401 U.S. at 568, 91 S.Ct. at 1037; *Kenney,* 297 A.2d at 796. A different approach "would be impractical and border on the absurd . . . ." *State v. Smith,* Me.Supr., 277 A.2d 481, 489 (1971).

The inquiry then shifts to McDerby in order to determine if he had probable cause to order Cooley's arrest. *Whiteley,* 401 U.S. at 568, 91 S.Ct. at 1037; *Kenney,* 297 A.2d at 796. The trial judge found that Shamany was the only officer involved who knew enough facts to reach a conclusion of probable cause, and she did not communicate them to either Thompson or McDerby.

There is also no finding that Shamany directed McDerby to order Cooley's arrest. The State asserts that Shamany's knowledge can nevertheless be imputed to McDerby since "the collective knowledge of an entire organization may be imputed to an individual officer when he is requested to [arrest a suspect]". *Schoenbneelt,* 368 A.2d at 119.

■ But the State misunderstands that principle here. To say in the abstract that probable cause is to be evaluated on the basis of the collective information of the police ignores the underlying assumption—and factual reality—that there is some communication between those officers, who do know facts amounting to probable cause, and those who do not. *See United States v. Ashley,* 569 F.2d 975, 983 (5th Cir.1978); *United States v. Woods,* 544 F.2d 242, 259–60 (6th Cir.1976); *United States v. Vasquez,* 534 F.2d 1142, 1145 (5th Cir.1976); *State v. Phillips,* Vt.Supr., 140 Vt. 210, 436 A.2d 746, 749–50 (1981). This situation is not one in which one or several officers report to a superior who then orders a warrantless arrest, or one in which information held by several officers is pooled to make an affidavit supporting an application for a warrant. *Compare United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Commonwealth v. Wagner,* Pa. Supr., 486 Pa. 548, 406 A.2d 1026 (1979); *Commonwealth v. Taylor,* Pa.Supr., 472 Pa. 1, 370 A.2d 1197 (1977); *Kenney, supra.* When an officer makes an arrest without first obtaining judicial approval in the form of a warrant, the officer acts in the stead of a magistrate. *See also Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). If "no officer connected to the arrest knows the facts which might justify it, no officer exercises the judgment required as a substitute for judicial approval. Information scattered among various officers in

ting, has committed or is about to commit a crime . . . ." 11 *Del.C.* § 1902(a). The State properly does not rely on this statute to justify Cooley's arrest or detention since Cooley was subjected to far more than questioning regard-

ing "his name, address, business abroad and where he is going," as allowed by section 1902(a). *Compare State v. Deputy,* Del.Supr., 433 A.2d 1040 (1981).

a police department cannot substitute for possession of the necessary facts by a single officer related to the arrest". *Commonwealth v. Gambit,* Pa.Super., 274 Pa.Super. 571, 418 A.2d 554, 557 (1980).

■ In light of the absence of communication between Shamany and McDerby, it follows that McDerby acted without probable cause in ordering Cooley's arrest. *Woods,* 544 F.2d at 259–60; *Phillips,* 436 A.2d at 749–50. *Compare .Whitson,* 334 A.2d at 654; *Kenney,* 297 A.2d at 796. McDerby's directions, therefore, do not justify Thompson's arrest or detention of Cooley at the troop. This makes Cooley's arrest improper under article I, section 6 of the Delaware Constitution [4] and the fourth amendment of the United States Constitution. *See Dunaway,* 442 U.S. at 214–16, 99 S.Ct. at 2257–58. The intoximeter test results were obtained as a direct result of Cooley's illegal detention, and that information was properly suppressed by the trial judge. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Nelson,* Pa.Supr., 488 Pa. 148, 411 A.2d 740 (1980) (equally divided court); *State v. Wrightson,* Del.Super., 391 A.2d 227 (1978). Any implied consent attributable to Cooley was given under circumstances which did not dissipate the effect of the illegal arrest. *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939); *Bertomeu,* 310 A.2d at 866–67. *Compare State v. Lynch,* Del.Super., 274 A.2d 443 (1971).[5]

### III.

■ Cooley has cross-appealed, contending that the Superior Court should have dismissed the indictment, pursuant to Superior Court Criminal Rule 48, because the State allegedly engaged in dilatory appellate tactics. The State responds that the defense caused the delays, and in any event, the State's first appeal was necessary. We conclude, however, that the cross-appeal must be dismissed for lack of jurisdiction.

The State appealed under 10 *Del.C.* § 9902. That statute is taken from federal law, 18 U.S.C. § 3731, permitting the United States to appeal in criminal cases. *State v. Fischer,* Del.Supr., 278 A.2d 324, 325 (1971); *State v. Dobies,* Del.Super., 290 A.2d 663, 665 (1972). Though an appellee may seek to uphold an order on any available ground in the record, a cross-appeal is unavailable when the United States appeals under 18 U.S.C. § 3731. *United States v. Margiotta,* 646 F.2d 729, 734 (2d Cir.1981); *United States v. Swarovski,* 557 F.2d 40, 49 (2d Cir.1977); *United States v. Halbert,* 436 F.2d 1226 (9th Cir.1970). That result is premised on the lack of statutory authority for such cross-appeals.

A similar result obtains here for two reasons. First, as in federal law, Delaware law does not provide for cross-appeals in such cases. *See* 10 *Del.C.* §§ 9901–04. *Compare* 10 *Del.C.* §§ 147, 9904 with 10 *Del.C.* §§ 148–49. Second, the jurisdiction of this Court in criminal appeals is strictly defined by article IV, section 11(1)(b) of the Delaware Constitution.[6] Any expansion of

---

4. "The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation."

5. Any person arrested for driving a vehicle while under the influence of liquor or drugs (21 *Del.C.* § 4177) is deemed to have consented to submit to a chemical test for determining his blood alcohol level. 21 *Del.C.* § 2740.

6. That provision states:

The Supreme Court shall have jurisdiction as follows:

\* \* \* \* \* \*

To receive appeals from the Superior Court in criminal causes, upon application of the accused in all cases in which the sentence shall be death, imprisonment exceeding one month, or fine exceeding One Hundred Dollars, and in such other cases as shall be provided by law; and to determine finally all matters of appeal on the judgments and proceedings of said Superior Court in criminal causes: Provided, however, that appeals

our jurisdiction should be clearly indicated by statute or constitutional amendment, which is not the case here. *See Steigler v. Superior Court,* Del.Supr., 252 A.2d 300 (1969). Cooley's cross-appeal must therefore be dismissed.

*   *   *

APPEAL AFFIRMED; CROSS–APPEAL DISMISSED.

Two related Certifications of questions of law are involved here: (1) A Certification by the Court of Chancery in *Perry v. Decker, et al.* (hereinafter "Perry"); and (2) a from the Superior Court in cases of prosecution under Section 8 of Article V of this Constitution shall be governed by the provisions of that Section.