J-A07002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
            :     PENNSYLVANIA
     Appellant   :
            :
            :
     v.      :
            :
            :
GREGORY SCIPPIO    : No. 844 EDA 2018

Appeal from the Order January 19, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0009888-2017

BEFORE: OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:      **FILED APRIL 17, 2019**

The Commonwealth of Pennsylvania appeals from an order entered on January 19, 2018, in the Court of Common Pleas of Philadelphia County (hereinafter "court of common pleas"), which granted Gregory Scippio's (Appellee) petition for writ of *certiorari* along with his motion to suppress.[1] We reverse.

The court of common pleas summarized the relevant facts as follows.

The following facts were presented at the hearing for the motion to suppress. On April 8, 2017, at 8:20 p.m., [after receiving multiple complaints about narcotics sales,] Officer Patrick Biles and other members of the 15th Police District Narcotics Enforcement Team [] set up a plain clothes surveillance [operation,] specifically targeting [] a Chinese restaurant [along Frankford Avenue]. Officer Biles testified at the [hearing on Appellee's motion to suppress]; however, *not testifying* was the officer who actually received the radio call from Officer Biles, and

---

[1] As made final by the March 5, 2018, order denying reconsideration.

---

who arrested Appellee, Officer [Thomas Schaffer.] Officer Biles testified that, at 8:30 p.m., he observed [Appellee] enter the restaurant, wearing a blue jeans jacket, a black hoodie, and jeans. At 8:40[p.m.], Appellee was approached by [an] unknown black male, wearing a red hoodie [and] black pants, [and] riding a mountain bike. There was a brief conversation, then the black male handed Appellee unknown paper, United States currency, whereupon Appellee went into his right pocket and produced a small object that he handed to the male. The male immediately left the store on his bike and went eastbound on Church Street. Officer Biles testified that he gave a description and direction of travel and clothing to his backup officers. They were not able to locate the suspect in the area. At 8:42[p.m.], Appellee was approached by another unknown black male with white pants and a white jacket, carrying a backpack. United States currency was passed from the unknown black male to Appellee, who then produced "small items." The unknown black male immediately left the store and headed north on Frankford Avenue, but [the police were unable to locate him]. At 9:10[p.m.], Appellee was [] approached by a male in an orange jacket, black hoodie, and black pants, [who was] later identified as Andrew Agha. After a brief conversation, Appellee took out of his right pocket what appeared to be a small clear tube with a neon green cap, and showed it to Agha. Agha handed Appellee United States currency [then] took the item from Appellee, put it in his pocket[,] and left, heading southbound on Frankford Avenue. Agha was stopped a block away on the 1600 block of Rowan Street. Officer Vaughn recovered [] a clear tube with a green neon top containing a green leafy substance [from Agha's mouth].

At approximately 9:25 p.m., Officer Biles witnessed Appellee leaving the area of [] Frankford Avenue, and "gave an order for backup to come in and take him down[."] [A]gain[,] [Officer Biles] never [testified to] the names of the backup officers on his team. Officer Schaffer stopped Appellee on the 1600 block of Rowan [Street], and recovered seven clear tubes with green neon tops, containing a green leafy substance, [] from Appellee's right pocket, as well as $27.00 in different denominations. A field [] test [showed] the presence of marijuana.

Court of Common Pleas Opinion, 6/21/2018, at 1-3. (internal footnote and citations omitted).

- 2 -

The Commonwealth charged Appellee with possession with intent to deliver,[2] knowing or intentional possession of a controlled substance,[3] and possession of marijuana.[4] Before the Philadelphia Municipal Court (hereinafter the "suppression court"), Appellee moved for suppression of all physical evidence confiscated from him on the grounds that it was obtained in violation of his constitutional rights. The suppression court denied the suppression motion after a hearing on September 8, 2017. Following a trial, the suppression court found Appellee guilty of possession of marijuana and not guilty of the other two charges. The suppression court fined Appellee $100.00 and imposed no further penalty. Appellee filed a petition for issuance of *writ* of *certiorari* challenging the suppression court's denial of his suppression motion. The court of common pleas granted Appellee's petition for *writ* of *certiorari*, granted the suppression motion, reversed his conviction, and vacated his sentence. This appeal by the Commonwealth, pursuant to Pa.R.A.P. 311(d), followed.[5]

_____

[2] 35 Pa.C.S.A. § 780-113(a)(30).

[3] 35 Pa.C.S.A. § 780-113(a)(16).

[4] 35 Pa.C.S.A. § 780-113(a)(31).

[5] In its notice of appeal, the Commonwealth certified that the order appealed from will, "terminate or substantially handicap the prosecution." *See* Pa.R.A.P. 311(d). On March 26, 2018, the court of common pleas ordered the Commonwealth to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth complied on April 13,

The Commonwealth presents a single issue for our review:

Did the [court of common pleas] err in reversing [Appellee's] conviction where the [suppression court] properly determined that an officer with probable cause ordered [Appellee's] arrest and that [Appellee] was seized pursuant to that directive?

Commonwealth's Brief at 4.

The Commonwealth argues that it was error for the court of common pleas to grant Appellee's petition for *writ* of *certiorari* and suppression motion. When a municipal court denies a motion to suppress, finds a defendant guilty, and imposes sentence, the defendant has two options. He may either petition the court of common pleas for *certiorari* or request a trial *de novo*. **See** Pa.R.Crim.P. 1006(1)(a). If the defendant files a petition for issuance of writ of *certiorari*, the court of common pleas sits as an appellate court—it reviews the record of the suppression hearing before the municipal court.[6] **Commonwealth v. Neal**, 151 A.3d 1068, 1070 (Pa. Super. 2016) (citations omitted). When sitting as an appellate court reviewing a motion to suppress, the court of common pleas applies the same standard that this Court would apply when reviewing the same.

---

2018. The court of common pleas issued its 1925(a) opinion on June 21, 2018.

[6] At a suppression hearing, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H).

- 4 -

Specifically, [the court of common pleas] is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, [the court of common pleas] may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. **Where the suppression court's factual findings are supported by the record, [the court of common pleas is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous**.

*Id*. at 1070-1071, *citing* **Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010) (internal quotation omitted)(emphasis added). "The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing." *Neal*, 151 A.3d at 1071.

Here, the court of common pleas, sitting as an appellate court, found that the suppression court's factual findings were not supported by the record. Specifically, it noted, "[t]he [suppression court] found that there was constant radio communication between Officer Biles and the arresting officer, and therefore, the arresting officer had sufficient probable cause to arrest Appellee." Court of Common Pleas Opinion, 6/21, 2018, at 3. The court of common pleas, however, disagreed. It found that the testimony only established constant radio communication between Officer Biles and Officer

Vaughn, and that there was no evidence that Officer Schaffer, who undertook the search and seizure of Appellee, was in constant radio contact.[7] *Id*. at 4.

In this case, the court of common pleas applied the rule set forth in ***Commonwealth v. Yong***, 177 A.3d 876 (Pa. 2018). In ***Yong***, our Supreme Court announced a rule that it categorized as a "modest amplification of the vertical application of the collective knowledge doctrine." *Id*. at 888. The vertical approach to the collective knowledge doctrine dictates that an officer making a warrantless arrest based on orders from a superior officer need not have probable cause so long as the superior officer had probable cause for the arrest. *See Commonwealth v. Kenney*, 297 A.2d 794 (Pa. 1972). ***Yong*** held that where there is evidence that two officers are working as a team, and one of them has probable cause to stop or arrest an individual, that knowledge can be imputed to the officer who makes the arrest, even without evidence that it was actually conveyed. *Id*. at 890. "[W]e hold the seizure is still constitutional where the investigating officer with probable cause or reasonable suspicion was working with the officer and would have inevitably and imminently ordered that the seizure be effectuated." *Id*.

_____

[7] The court of common pleas did not dispute that Officer Biles, who witnessed the three exchanges between Appellee and his alleged customers and had years of experience surveilling narcotics operations, had probable cause to arrest and search Appellee. Instead, Appellee argued, and the court of common pleas agreed, that the evidence did not establish that Officer Schaffer stopped Appellee based on Officer Biles' instruction.

The court of common pleas applied that rule to the facts as it saw them, and came to the conclusion that because Officer Biles did not explicitly testify to the fact that Officer Schaffer received an order or was part of his team, Officer Schaffer lacked probable cause to stop and search Appellee. Accordingly, the court of common pleas reversed the order of the suppression court, granted Appellee's suppression motion and vacated his conviction and sentence for possession of marijuana.

We disagree with the court of common pleas' very narrow reading of the record. As stated previously, "[w]here the suppression court's factual findings are supported by the record, [the court of common pleas is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). The reviewing court must also consider only the evidence presented by the party that prevailed before the suppression court. *Id*. As such, the court of common pleas was required to review the evidence presented by the Commonwealth and determine whether the facts found by the suppression court were supported by the record.

The suppression court found that, because the officers were in "constant radio communication," there were grounds to arrest Appellee. N.T., 9/8/2017, at 12. On cross-examination, Officer Biles testified as follows.

Q. So I am clear, there is only one alleged buyer stopped?

A. Yes.

Q. And that is Mr. Agha?

A. I think that is how you say it.

Q. You didn't witness him get stopped?

A. No I didn't.

Q. That is another officer telling you about that?

A. We are in constant radio communication.

N.T., 9/8/2017, at 8-9.

The court of common pleas interpreted Officer Biles' statement, "**[w]e are in constant radio communication,**" as referring only to communications between Officer Vaughn and Officer Biles, and excluding Officer Schaffer from their communication loop. However, the suppression court clearly understood that statement to refer to the entire narcotics enforcement team, including Officer Schaffer. Moreover, the court of common pleas took issue with the fact that Officer Biles never specifically stated that Officer Schaffer was part of the narcotics enforcement team. The suppression court, however, inferred as much. This inference is supported by the following testimony given by Officer Biles. "I witnessed the defendant leaving the area of [] Frankford [Avenue]. Fearing he wasn't coming back, **I gave an order for backup to come in and take him down. Officer Schaffer stopped the defendant on the 1600 block of Rowan.**" N.T. 9/8/2017, at 6 (emphasis added). It is reasonable to conclude from Officer Biles' testimony that Officer Schaffer

was the backup to which Officer Biles referred. Again, the suppression court's findings were supported by the record.[8]

The court of common pleas, sitting as an appellate court, was bound by the factual findings of the suppression court because they were supported by the record. In light of the facts found by the suppression court, Appellee was stopped by an officer who was acting on the orders of another officer with probable cause to arrest and search Appellee. Hence, Appellee was the subject of a lawful arrest. *See Kenney*, 297 A.2d at 796. The court of common pleas erred in reversing the decision of the suppression court and we, therefore, vacate its rulings. The order of the Court of Common Pleas is vacated. Appellee's conviction and sentence are reinstated.

Order reversed. Appellee's conviction and judgment of sentence of September 8, 2017, are reinstated. Jurisdiction relinquished.

---

[8] We reject Appellee's contention that the present case is distinguishable from *Yong* in that Officer Biles, the investigating officer, did not have probable cause to seize Appellee, and therefore probable cause could not be imputed to the arresting officer, Officer Schaffer. *See* Brief for Appellee at 11-12. Officer Biles witnessed Appellee participate in what he believed, based on his training and experience, to be three drug transactions in a location about which he had received complaints of drug trafficking. Officer Biles had probable cause to search and seize Appellee. *See Commonwealth v. Thompson*, 985 A.2d 928, 936 (Pa. 2009). Moreover, as previously noted, the court of common pleas did not find that Officer Biles lacked probable cause to seize Appellee. *See* p.6, n. 7, *supra*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/17/19