# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE, )
)
v. )
)    Case ID#1803016194
)
EDWARD W. SZCZERBA, )
)
Defendant. )

Reserved: January 14, 2019
Decided: May 21, 2019

Louis F. D'Onofrio, Esquire
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Michael W. Modica, Esquire
Attorney at Law
715 N. King Street, Suite 300
Wilmington, DE 19801
*Attorney for Defendant*

## MEMORANDUM OPINION ON
## DEFENDANT'S MOTION TO SUPPRESS

**MANNING, J.**

1

## FACTUAL AND PROCEDURAL HISTORY

On March 25, 2018, Edward Szczerba (hereinafter "Defendant") was arrested by Master Corporal Grajewski (hereinafter "Grajewski") for the offense of Driving a Vehicle Under the Influence of Alcohol (DUI) in violation of 21 *Del. C.* § 4177. The facts which gave rise to these proceedings indicate that Patrolwoman Simmons (hereinafter "Simmons") of the Kennett Township Police Department observed Defendant traveling at a "speed [that] was higher than the [posted] 45mph limit." Simmons began to follow Defendant whereupon she observed that the rear registration tag was not properly illuminated. Simmons activated her emergency lights and pursued Defendant. The traffic stop and all relevant events were recorded on MVR and body camera, both of which were entered into evidence.[1] Defendant failed to comply with the lights and sirens and continued to drive, and at one point, for no obvious reason, applied his breaks and a very sudden and hard manner. After following Defendant for about a mile, Defendant was forced to come to a stop in a Wawa parking lot in Hockessin, Delaware. Upon approaching Defendant's vehicle and speaking with him, Simmons detected a strong odor of alcohol coming from Defendant's breath and person. Simmons testified that Defendant's speech was slurred and that he "was having a hard time forming words [and] sentences." Defendant's eyes were also bloodshot. Defendant had a difficult time responding to Simmons' request that

---

[1] State's Exhibits 1 & 2

2

he produce his license and registration.  Additionally, Simmons observed several Miller Light beer cans in the rear of Defendant's vehicle cabin.

Based on her training and experience, Simmons testified that she believed Defendant was driving under the influence of alcohol.  However, rather than pursue the investigation herself, Simmons contacted Delaware police to respond to the scene.  Grajewski arrived on scene and Simmons "advised him of the incident."  Grajewski took over the investigation and upon making contact with Defendant, detected a "moderate" odor of alcohol, observed his eyes to be red and bloodshot, and that his speech was slurred.  Grajewski asked Defendant his full date of birth which he was only able to answer correctly on his third attempt.  Upon exiting his vehicle, Defendant was observed to have issues with his balance and staggered somewhat.  Based on his training and experience, Grajewski testified that he believed Defendant was driving under the influence of alcohol.

Grajewski then had Defendant walk over to the side of the Wawa to conduct field sobriety tests.  Grajewski first attempted to administer the Horizontal Gaze Nystagmus test.  Body camera footage shows Defendant swaying and rocking during the tests and was unable to comply with Grajewski's instructions, despite multiple attempts.  More specifically, Defendant was unable to keep his head still and use *only* his eyes to follow the tip of the stimulus Grajewski's was using to administer the test.  Defendant became visibly frustrated when Grajewski repeatedly instructed Defendant to keep his head still,

3

and at one point pleaded with Grajewski to "work with me." The test was discontinued because Defendant could not comply with the basic instructions.

Grajewski then attempted to administer the Walk and Turn test. Again, Defendant was unable to comply with the test instructions. Defendant was swaying back and forth and had a difficult time standing. Ultimately, Grajewski was concerned that Defendant was going to fall over and injure himself so he made the decision to stop the test. Grajewski then took Defendant into custody and had him sit in the back of his vehicle while waiting on a tow truck to remove his vehicle.

On December 17, 2018, Defendant filed a Motion to Suppress. The Court held a hearing on the motion to suppress in conjunction with a bench trial January 14, 2019. Upon conclusion of the hearing, the trial was adjourned and the Court took the suppression motion under advisement. At the request of the Court, the State and Defendant both filed supplemental briefs following the hearing.

## LEGAL STANDARD

On a "motion to suppress, the State must establish, by a preponderance of the evidence, that Defendant's arrest was supported by probable cause." [2] To establish probable cause for a DUI arrest, the state "must present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that

---

[2] *State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Oct. 14, 2010).

4

the defendant has committed a DUI offense." [3] This totality consideration is based on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." [4] "The Court must examine the totality of circumstances surrounding the situation as viewed through the 'eyes of a reasonable trained police officer in similar circumstances, combining the objective facts with the officer's subjective interpretation of those facts.'" [5]

## DISCUSSION

Defendant moves to suppress the evidence gathered as a result of his extended detention and ultimate arrest by Grajewski. [6] Defendant argues that Simmons failed to sufficiently communicate her reasonable suspicion of Defendant's impairment to Grajewski, and therefore, Grajewski lacked the required reasonable suspicion to conduct the DUI investigation or probable cause to arrest. [7] Defendant relies on *State v. Cooley*,

---

[3] *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011).

[4] *State v. Cardona*, 2008 WL 5206771, at *3 (Del. Super. Dec. 3, 2008) (quoting *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993)).

[5] *State v. Kane*, No. 1210019022, 2014 WL 12684290, at *4 (Del. Com. Pl. Feb. 12, 2014); *See Woody v. State*, 765 A.2d 1257, 1262-64 (Del. 2000).

[6] Defendant's motion to suppress based on lack of reasonable suspicion to detain Defendant was previously denied from the bench. This decision only address Defendant's motion to suppress for lack of probable cause to arrest.

[7] I note the record in the case is not as fully developed as it could have been. This issue was raised orally by Defendant at the end of the hearing; therefore, the State was not on notice of it when the officers were questioned on direct examination. Had the State moved to re-open the evidence the Court certainly would have granted the request.

5

457 A.2d 352, 355 (Del. 1983), which stated if "no officer connected to the arrest knows the facts which might justify it, no officer exercises the judgment required as a substitute for judicial approval."[8] Further, in *Cooley*, the Court found that the only officer who knew enough facts to reach a conclusion as to probable cause did not communicate them to the actual arresting officer.[9] Thus, the absence of communication between the officers resulted in a lack of probable cause to arrest.[10] Defendant also relies on *State v. Holmes*, 2015 WL 5168374, at *4 (Del. Super. 2015), where the Delaware Superior court found "in the absence of communication amongst a team of officers, the stop or arrest of an individual by an officer not possessing any such knowledge is improper."

The State argues Grajewski had reasonable and articulable suspicion to continue the investigation of Defendant.[11] The State asserts that when Grajewski arrived on the scene Simmons advised him of the facts of the incident. The State maintains Grajewski properly acted on the information communicated to him by Simmons and his own observations. The

---

[8] In *Cooley*, Trooper Shamany responded to the scene of an accident. State Police Corporal McDerby later arrived at the scene and established radio contact with desk Sergeant Thompson. Sergeant Thompson acted on the radio conversation with Corporal McDerby, arrested Cooley for driving under the influence and administered an intoximeter test. Trooper Shamany did not communicate facts regarding the scene to either Corporal McDerby or Sergeant Thompson.

[9] *Id.*

[10] *Cooley* at *356.

[11] In the alternative, the State advances Grajewski was permitted to investigate Defendant in pursuant to Delaware's Fresh Pursuit Statute governing arrest by out-of-state police, citing to 11 *Del.C.* § 1932(a). Based on the facts presented, I do not find it necessary to address this argument.

State distinguishes *Cooley* and *Holmes* in that Simmons communicated with Grajewski and Grajewski used that information to continue the investigation and administer DUI tests.

However, Defendant argues Simmons' testimony that she advised Grajewski of "the incident" is vague and lacking sufficient factual detail to support the DUI investigation because she failed to communicate her knowledge of Defendant's impairment to Grajewski.

Simmons testified that she advised Grajewski "of the incident" when he arrived on the scene. Grajewski testified that based on the totality of "everything," Defendant was impaired. Specifically, Grajewski stated:

> Grajewski: Ultimately from everything that I observed and was
>
> told by Officer Simmons was that [Defendant] was impaired. He
>
> was highly impaired.
>
> State: And is that based on your observations as well?[12]
>
> Grajewski: The totality of everything, yes.[13]

The facts adduced during the hearing indicate that Defendant was pulled over for a motor vehicle equipment violation and erratic driving. It is clear from the testimony that

---

[12] *Id.*

[13] *Id.*

Defendant's odor of alcohol, slurred speech, poor coordination, and red eyes put both Simmons and Grajewski on notice that he was impaired.

Simmons conveyed information regarding Defendant's impartment to Grajewski. Although Grajewski and Simmons never explicitly testified to exactly what information was conveyed during their exchange, it is clear from the MVR, body camera footage and their testimony, that Simmons communicated Defendant's suspected impairment to Grajewski once he arrived on scene. Grajewski based his opinion on the information that was conveyed to him by Simmons and on his own observations when he spoke with the Defendant. Based on these observations, Grajewski had reasonable suspicion to request Defendant perform field sobriety tests. It is important to note that up until the time Grajewski made contact with Defendant, he was actually still in the legal custody of Simmons and that detention was based on her observations of his driving and suspected impairment. Because of this, the facts in this case are distinguishable from *Cooley* and *Holmes*. This is not a situation where an officer attenuated from the scene and lacking independent knowledge made the decision to arrest. In this case, there is sufficient evidence that both officers communicated with each other at the scene and shared information prior to Defendant being arrested. Grajewski's decision to initially conduct a DUI investigation was reasonable based on what he had been advised by Simmons. Additionally, this case is distinguishable in light of the fact that Grajewski only made his

8

decision to arrest Defendant after attempting to conduct multiple field sobriety tests in conjunction with his own observations.

Thus, under the totality of the circumstance, I conclude the arrest of Defendant was supported by probable cause and the motion to suppress is DENIED.

The Clerk shall schedule the matter for trial forthwith so counsel may make closing arguments.

**IT IS SO ORDERED.**

Bradley V. Manning,
Judge