# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. No. 1807010648 |
| | ) | |
| THOMAS J. GORDON, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: March 27, 2025
Decided: June 18, 2025

## OPINION

*Upon Defendant's Motion For Postconviction Relief*

## DENIED

Erik C. Towne, Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the State*.

Megan J. Davies, Esquire, Law Offices of Megan J. Davies, Wilmington, Delaware, *Attorney for the Defendant*.

**Primos, J.**

Petitioner Thomas J. Gordon ("Gordon") was convicted of two felonies in 2019. On direct appeal to the Delaware Supreme Court, Gordon asserted that this Court erred in denying his pre-trial motion to suppress evidence from a pretextual traffic stop, citing *McDonald v. State*,[1] and making various other arguments to support his view that the stop was illegal. The Supreme Court agreed that application of the *McDonald* decision required suppression of the evidence against Gordon but overturned that precedent and rejected Gordon's other suppression arguments.[2]

Currently pending are Gordon's objections to a Superior Court Commissioner's report and recommendation that his amended motion for postconviction relief under Superior Court Criminal Rule 61 be denied. In his amended motion, Gordon asserted various ineffective-assistance claims against his trial counsel ("Trial Counsel") and his appellate counsel ("Appellate Counsel"), and that this Court erred in various ways that prejudiced him at trial. Gordon has objected to five portions of the Commissioner's report and recommendation, raising largely the same arguments that he did before the Commissioner.

Gordon's claim of judicial error is procedurally barred because he did not raise it on direct appeal, and each of his ineffective-assistance claims either lacks merit or does not justify the relief he seeks. Accordingly, Gordon's amended motion for postconviction relief is **DENIED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

The following facts are limited to those necessary to dispose of Gordon's pending motion. Among the omitted facts are those supporting probable cause to arrest Gordon after his vehicle was stopped. Gordon challenges the basis for the stop, but does not argue that the subsequent arrest was unsupported by probable

---

[1] 947 A.2d 1073 (Del. 2008), *overruled by Gordon v. State*, 245 A.3d 499 (Del. 2021) (en banc).
[2] *See generally Gordon*, 245 A.3d 499.
[3] Citations in the form of "D.I. ___" refer to docket items.

2

cause. Thus, many details of the events occurring between the stop and the arrest are irrelevant to this opinion.

**A. Gordon Is Arrested And Searched**

On July 15, 2018, members of the Delaware State Police ("DSP"), operating pursuant to an ongoing wiretap investigation, intercepted a call suggesting an imminent drug transaction between known parties, including Gordon. DSP surveillance then observed the occupants of a blue Mazda—Gordon among them— engage in that drug transaction.[4] When the Mazda headed south from New Castle County, DSP detectives Michael and Thomas Macauley relayed this information to DSP Trooper Brian Holl, a member of Kent County's "drug task force," and requested that Holl pull the vehicle over.[5] Thomas Macauley asked that Holl develop independent probable cause for the stop to avoid jeopardizing the security of the wiretap investigation.[6] Holl then pulled the Mazda over on the pretextual basis that its headlights were not activated in inclement weather conditions.[7] In the course of the traffic stop, Trooper Holl observed suspected marijuana in plain view.[8] Holl handcuffed Gordon.[9] In the rear seat of the vehicle, Holl found a large quantity of glassine bags commonly used for packaging drugs for individual sale.[10]

Holl and another officer each attempted to conduct a "pat-down" search of Gordon at the scene but were unable to do so because he was uncooperative, particularly when Holl's search approached his groin.[11] Later, Michael Macauley (with Holl assisting) performed a third pat-down at DSP Troop 3 headquarters and

---

[4] D.I. 42, A33:2–35:8.
[5] *See* Section I.C. of this opinion, *infra*.
[6] D.I. 44, B55:4–11; D.I. 45, C12:1–14:2.
[7] 21 *Del. C.* § 4331 requires that drivers' headlights be activated "during . . . rain or when windshield wipers are in use because of weather conditions."
[8] D.I. 44, B58:7–19.
[9] D.I. 44, B59:2–10.
[10] D.I. 44, B60:6–61:17.
[11] D.I. 44, B63:15–65:14, B101:10–20.

felt a suspicious bulge in Gordon's pants.[12]  When Gordon refused to remove the object from his pants, Michael Macauley removed it himself.[13]  The search yielded an 11-gram bag of heroin.[14]

## B. Gordon Files A Motion To Suppress, And The State Reveals The True Reason For The Traffic Stop

After arresting Gordon, Trooper Holl swore out an affidavit in the Justice of the Peace Court attesting to his probable cause to conduct the arrest.[15]  Holl's affidavit made no mention of the wiretap or drug investigation's role in motivating the traffic stop, instead attributing the stop solely to the Mazda driver's alleged headlight infraction.[16]  Holl did, however, state that he had "not listed all of the facts pertaining to this case, only those necessary to establish probable cause."[17]

Gordon was indicted on five charges:  Drug Dealing; Aggravated Possession (of heroin); Conspiracy Second Degree (to commit the felony of Drug Dealing); Possession of Marijuana; and Possession of Drug Paraphernalia.[18]  The State ultimately filed a *nolle prosequi* on the marijuana charge.[19]  The Mazda's driver, Jasmon Smith, was also indicted and made a codefendant.

Prior to trial, Gordon filed a motion to suppress.  He incorporated his codefendant's contention that the evidence against them resulted from an unlawful traffic stop because it was not raining at the time of the stop, and independently asserted that the removal of the heroin from Gordon's groin area was an invasive "strip search" that law enforcement could not perform without first obtaining a

---

[12] D.I. 42, A76:9–77:8; D.I. 44, B68:1–9, B88:2–92:8.

[13] D.I. 42, A77:6–80:2; D.I. 44, B68:17–69:14.

[14] *See* D.I. 71, C17:17–23 (forensic chemist's testimony as to the weight and composition of the drugs).

[15] *Gordon*, 245 A.3d at 503.

[16] *Id.*

[17] *Id.*

[18] D.I. 4.

[19] D.I. 52.

4

warrant to do so.[20] After the Court scheduled a hearing on Gordon's suppression motion, the State filed an addendum that disclosed the existence of a wiretap investigation, stated that Holl received information from other officers about a wiretapped conversation and "observed meet-up," and argued that Holl had reasonable articulable suspicion that the driver possessed controlled substances at the time of the stop.[21]

## C. At The Suppression Hearing, The Officers Testify To Their Communication With One Another

Following the State's disclosure, this Court held a three-day evidentiary hearing on Gordon's motion to suppress. Detectives Thomas and Michael Macauley, Trooper Holl, and Gordon testified.

Michael Macauley testified that he contacted Holl after DSP observed the drug transaction to inform Holl that DSP was following a blue Mazda involved in the transaction, and that he asked Holl to facilitate a traffic stop of that car.[22]

Holl testified that he was already aware of the wiretap investigation and Gordon's connection with it because Thomas Macauley had previously informed him of these facts.[23] Holl further testified that Thomas Macauley contacted him again on the day in question to request a stop of the Mazda, and that he instructed Holl that Holl needed to develop his own basis for the stop to protect the integrity of the wiretap investigation.[24] Trial Counsel, in attempting to highlight the pretextual nature of the traffic stop despite Holl's affidavit indicating that he was on "routine patrol," initiated an exchange somewhat muddying the waters. Holl denied that he was on "directed assignment," as Thomas Macauley was not a supervisor, and

---

[20] D.I. 10.
[21] *Gordon*, 245 A.3d at 504.
[22] D.I. 42, A37:9–20, A62:5-10.
[23] D.I. 44, B51:23–52:10.
[24] D.I. 44, B54:6–55:11.

5

testified that, although Macauley wanted the Mazda pulled over, the stop was "based on probable cause that [Holl] developed."[25]  However, Holl made clear that he knew the Macauleys wanted him to conduct the stop and that he was aware of the circumstances motivating them to seek it.[26]

Thomas Macauley testified that he advised Holl that the Mazda's occupants, including Gordon, had been involved in a suspected drug transaction, and that this suspicion was consistent with intercepted phone conversations.[27]  He therefore requested that Holl conduct a traffic stop because the DSP surveillance officers following the Mazda were in unmarked cars without police lights and were not wearing uniforms.[28]

### D. The Trial Judge Denies Gordon's Motion To Suppress

After hearing the testimony of the three officers and Gordon, the Court issued an oral order denying Gordon's motion to suppress on Friday, July 26, 2019.  The Court held that Trooper Holl's pretextual basis for the traffic stop did not afford reasonable articulable suspicion to carry it out, as Holl's affidavit and testimony that it was raining were contradicted by video captured by his patrol vehicle.[29]  Nonetheless, the Court held that the wiretap-investigation information that had been communicated to Holl independently justified the stop, noting that Holl's subjective motivation was irrelevant pursuant to *Whren v. United States*.[30]  The Court reasoned that reasonable articulable suspicion held by the Macauleys could be imputed to Holl through the collective knowledge doctrine given their communication with him.[31]  In other words, since Holl performed the stop at the behest of Thomas and Michael

---

[25] D.I. 44, B73:22–74:23.
[26] D.I. 44, B73:22–74:23, B76:15–23.
[27] D.I. 45, C10:16–11:23.
[28] D.I, 45, C12:1–12.
[29] D.I. 54, 3:4–5.
[30] D.I. 54, 2:20–3:3 (citing *Whren v. U.S.*, 517 U.S. 806 (1996)).
[31] D.I. 54, 5:7–10:3.

Macauley, who held reasonable articulable suspicion, the stop was not constitutionally infirm, even if Holl had not personally developed such suspicion.

### E. Trial Counsel Denies Gordon's Motion For Reargument

On Monday, July 29, 2019, the Court held a conference at Gordon's request. Trial Counsel made an oral motion for reargument but failed to indicate what, if any, legal basis there was for the motion. Trial Counsel indicated that she had met with Gordon that morning, and that Gordon, who had performed research over the weekend, was "adamant about a request to reargue based on the legal grounds," but she was not comfortable presenting his argument because she did not yet fully understand it.[32] The Court denied the motion because trial was scheduled to begin that day and Gordon had vigorously asserted his speedy trial rights at the outset of the suppression hearing the prior week.[33]

It may be that the ground for suppression Gordon wished to assert on reargument was the application of the Supreme Court's decision in *McDonald v. State*. The *McDonald* Court held that, under the "four corners" test, when a defendant was arrested without a warrant following a traffic stop, only the bases for the traffic stop stated in the arresting officer's post-arrest affidavit could be used to justify it.[34] Trial Counsel acknowledges that Gordon had raised *McDonald* with her prior to the presentation of the suppression motion.[35] Nonetheless, *McDonald* was never raised to the Court prior to trial.

---

[32] *See* D.I. 69, 2:11–3:20.
[33] D.I. 69, 4:9–20.
[34] *McDonald*, 947 A.2d at 1078–79; *see also id.* at 1084–85 (Noble, V.C., dissenting) (criticizing the majority's application of the "four corners" test).
[35] *See* D.I. 118, 1.

**F. Gordon Is Tried And Convicted On Two Counts**

On August 1, 2019, a Superior Court jury found Gordon guilty of Aggravated Possession and Conspiracy in the Second Degree.[36] This verdict followed the parties' closing arguments. The propriety of both arguments is contested by Gordon's pending motion.

On closing, the State contended that Gordon must have been aware of the drugs and paraphernalia in the car,[37] and that he had, in his trial testimony, admitted to conspiracy to commit aggravated possession—an uncharged offense.[38] As to the charged offense of conspiracy to commit drug dealing, the State raised "another way" to consider the charge, noting that Gordon's testimony suggested that he "always intended to give [the heroin] back to" the driver.[39]

Trial Counsel responded with a brief closing that did not directly address the charges of Conspiracy in the Second Degree or Possession of Drug Paraphernalia.[40] Rather, Trial Counsel argued that the Drug Dealing and Aggravated Possession charges required that Gordon know that the bag contained heroin, and that there was no evidence to that effect. Trial Counsel's closing took the form of a sympathetic story: Gordon was unaware of the drugs in the vehicle until Trooper Holl initiated the traffic stop, panicked upon learning that there were drugs in the car, and attempted to hide them to avoid guilt by association with the vehicle's driver.[41]

Although convicted of two charges, Gordon was also acquitted of two charges, Drug Dealing and Aggravated Possession of Drug Paraphernalia.[42]

---

[36] D.I. 52.
[37] D.I. 71, C69:11–15, C71:14–22.
[38] D.I. 71, C67:11–68:18, C74:5-8.
[39] *See* D.I. 71, C73:9–74:9.
[40] In fact, Trial Counsel did not explicitly request that the jury acquit Gordon of either the Possession of Drug Paraphernalia charge or the Conspiracy Second charge. D.I. 71, C79:9–15.
[41] D.I. 71, C74:13–79:15.
[42] D.I. 52.

### G. Gordon Unsuccessfully Appeals His Convictions To The Supreme Court

Following his conviction, Gordon appealed to the Supreme Court, arguing that the evidence from the traffic stop should have been suppressed because the traffic stop and the subsequent arrest and search were unsupported by probable cause.[43]  In support of this contention, Gordon advanced three arguments:  (1) no officer had probable cause to search the vehicle; (2) Trooper Holl was not directed to stop the vehicle by either Macauley brother, and therefore the Superior Court should not have considered what they told him about Gordon's activities; and (3) pursuant to *McDonald*, because the Macauleys' communications to Holl were not included in the arrest-warrant affidavit filed after Gordon's arrest, the Superior Court should not have relied on those communications to find probable cause.[44]

In an opinion dated January 6, 2021, the Delaware Supreme Court affirmed Gordon's convictions.  As to his first two arguments, the Court reasoned that only reasonable suspicion was required to conduct the traffic stop,[45] and that the Superior Court's application of the collective knowledge doctrine to find such suspicion was not erroneous.[46]  As to his final argument, the Court found that, "had the Superior Court applied . . . *McDonald v. State* . . . Gordon would have prevailed below," but the Court overruled *McDonald* as wrongly decided.[47]  The Court specifically held that the Superior Court "did not err by considering facts extraneous to the subsequently filed arrest-warrant affidavit" in deciding Gordon's motion to suppress.[48]

On January 19, 2021, Appellate Counsel moved for reargument on Gordon's

---

[43] *Gordon*, 245 A.3d at 507–08.
[44]  *Id.* at 508.
[45]  *Id.* at 508–11.
[46] *Id.* at 511–12.
[47] *Id.* at 512–16.
[48] *Id.* at 516.

behalf, and on January 21, 2021, the Court denied Gordon's motion for reargument as meritless. Gordon attempted further appeal to the United States Supreme Court, but that Court denied certiorari on October 4, 2021.[49]

### H. Gordon Files For Postconviction Relief Under Rule 61

On October 18, 2021, Gordon filed a *pro se* motion for postconviction relief and a motion for appointment of counsel. The Court approved the latter motion and appointed Gordon's current counsel, who filed an amended motion for postconviction relief on January 5, 2023.[50] Gordon's amended motion was assigned to the Commissioner for proposed findings of fact and recommendations for disposition pursuant to Superior Court Criminal Rule 62(a)(5). Because Gordon claimed ineffective assistance of counsel, the Commissioner ordered[51] Trial Counsel and Appellate Counsel to submit affidavits[52] responsive to his claims. Following receipt of the affidavits and briefing by the parties, the Commissioner submitted an October 1, 2024, report and recommendation that Gordon's motion be denied.[53] On October 15, 2024, Gordon timely filed objections to the Commissioner's recommendations pursuant to Superior Court Criminal Rule 62(a)(5)(ii).[54]

Gordon objects to five portions of the Commissioner's recommendations. Defendant contends that the Commissioner erred in finding that: (1) this Court did not abuse its discretion in finding that officers' testimony about the extent of their search of Gordon's person was credible, and that the purported invasiveness of that search therefore did not mandate suppression of the evidence found as a result of the search; (2) Trial Counsel was not ineffective in failing to raise *McDonald* in support

---

[49] *Gordon v. Delaware*, 142 S. Ct. 189 (2021).
[50] D.I. 113.
[51] D.I. 114; D.I. 129.
[52] *See* D.I. 118; D.I. 130.
[53] *See* D.I. 135.
[54] D.I. 136.

of Gordon's motion to dismiss; (3) Neither Trial Counsel nor Appellate Counsel was ineffective for failing to object to the purportedly-prejudicial statements the prosecutor made about Gordon's conspiracy charge during closing arguments; (4) Trial Counsel's closing was not ineffective even though she did not present an explicit argument on the conspiracy charge; and (5) Trial Counsel was not ineffective for failing to challenge the application of the collective knowledge doctrine to the vehicle stop.

Upon reviewing Gordon's objections and the record developed before the Commissioner, this Court ordered Trial Counsel to submit a supplemental affidavit further responding to Gordon's ineffective-assistance claims, finding that Gordon had implicitly waived attorney-client and work-product privilege as to those claims.[55] Trial Counsel submitted that affidavit on March 11, 2025.[56] Gordon responded to the affidavit on March 17, 2025.[57] On March 27, 2025, the State informed the Court that its previous filings adequately responded to any issues raised by the supplemental affidavit, and that the State did not intend to submit any further argument.[58]

## II. ANALYSIS

### A. Standard of Review

When a party files objections to portions of a Commissioner's proposed findings and recommendations, the Court reviews those portions *de novo*.[59] This Court "may accept, reject, or modify, in whole, or in part," the Commissioner's findings and recommendations.[60] Upon review, the Court concludes that Gordon's

---

[55] D.I. 140.
[56] D.I. 142.
[57] D.I. 143.
[58] D.I. 144.
[59] Super. Ct. Crim. R. 62(a)(5)(iv).
[60] *Id.*

claim that this Court erred in finding the officers' description of the "strip search" credible is procedurally defaulted, and even if not defaulted, meritless; and that each of Gordon's claims of ineffective assistance of counsel either fails to show deficient performance, fails to show prejudice, or does not merit the remedy Gordon seeks.

**B. Gordon's Claim That The Court Erred In Finding The Officers Credible During The Suppression Hearing Is Procedurally Defaulted Because It Was Not Raised On Direct Appeal.**

The Court will summarily dismiss Gordon's claim that the Court erred in finding Trooper Holl's and Michael Macauley's non-invasive characterization of the "strip search" credible. The Court need not consider the merits of claims that are procedurally barred by Superior Court Criminal Rule 61.[61] Under Rule 61(i)(3), a claim not raised on direct appeal is procedurally barred unless the petitioner can establish (1) cause for failure to raise the claim in the original proceeding; and (2) actual prejudice flowing from the failure to assert the claim.[62]

Gordon's credibility argument is procedurally barred because he failed to raise it on direct appeal. Although, in appealing his conviction, Gordon initially asserted that the "strip search" was unlawful, the Supreme Court found that Gordon had abandoned this argument.[63] Before the Commissioner, Gordon argued that Appellate Counsel was ineffective in failing to maintain this claim on appeal, but the Commissioner found that this decision was not ineffective assistance, and Gordon has not objected to that finding.[64] Since Gordon does not now contend that his failure to raise the "strip search" issue on direct appeal was the result of ineffective assistance, he has failed to show cause why that issue was not presented to the

---

[61] *See Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[62] *Dawson v. State*, 673 A.2d 1186, 1190, 1197 (Del. 1996) (defendant's argument for the unconstitutionality of his death sentence was procedurally barred when raised for the first time in motion for postconviction relief).

[63] *Gordon*, 245 A.3d at 507.

[64] *See* D.I. 136, 13–17 (solely disputing the merits, rather than the performance of Appellate Counsel).

Supreme Court, and does not therefore assert an exception to Rule 61(i)(3)'s procedural bar.

Even if Gordon's claim were not procedurally barred, the Court would reject it as meritless. Gordon's argument, at root, is that this Court abused its discretion by not accepting his testimony that, after Trooper Holl initiated the traffic stop, Gordon—unaware of any criminal enterprise until that point—had the bag of heroin thrust upon him by the driver; that, in the short time before Holl approached his window, Gordon not only inserted the bag into his underwear, but tied it in a knot around his genitalia; and that both Trooper Holl and Michael Macauley perjured themselves by denying that the bag required invasive efforts to extricate.[65]

Gordon's version of events merits skepticism, and this Court will not reverse its decision to reject it six years ago, when the Court had the now-faded opportunity to evaluate the demeanor of the witnesses. That opportunity cannot be replicated on a cold record.[66] For that reason, a trial judge's determination of credibility after an evidentiary hearing is only set aside if clearly erroneous.[67] Although the Court found that Holl's testimony about the weather conditions at the time of the stop was contradicted by video evidence, it is well-established that fact-finders may find some portions of witnesses' testimony credible while rejecting others.[68] Even if the Court were obligated, as Gordon thinks, to conclude that Holl lacked *all* credibility, and thus that *all* of his testimony should have been discounted, the fact remains that Holl's testimony about the search was corroborated by Michael Macauley, who

---

[65] *Id.*

[66] *Jones v. State*, 938 A.2d 626, 635 (Del. 2007) (en banc) ("[A] cold record can not replace a trial court's credibility determinations.").

[67] *State v. Rollins*, 922 A.2d 379, 382 (Del. 2007) (citing *Riley v. State*, 892 A.2d 370, 373 (Del. 2006)).

[68] *See Washington v. State*, 4 A.3d 375, 378 (Del. 2010) ("The jury has 'discretion to accept one portion of a witness' testimony and reject another part.'" (quoting *Pryor v. State*, 453 A.2d 98, 100 (Del. 1982))).

13

actually conducted it.[69]  In short, the Court's credibility determination was far from clearly erroneous.

### C. Defendant's Claims of Ineffective Assistance of Counsel Lack Merit.

Unlike his credibility argument, Gordon's various ineffective-assistance claims are not procedurally barred by Rule 61.  As the Supreme Court has explained:

> Except under extraordinary circumstances, ineffective-assistance-of-counsel claims cannot be asserted in the proceedings leading to a judgment of conviction.  For obvious reasons, they are not raised during trial, and our case law recognizes that they are rarely susceptible to resolution on direct appeal.  Accordingly, as a general matter, the procedural bar of Rule 61(i)(3) does not apply to ineffective-assistance-of-counsel claims.[70]

Thus, this Court will consider Gordon's claims against Trial Counsel and Appellate Counsel on their merits.  On the merits, Gordon's ineffective-assistance claims fail.

Claims of ineffective assistance of counsel are governed by the familiar two-pronged framework established by *Strickland v. Washington*.[71]  Under *Strickland*, a defendant must show, first, that his counsel's conduct fell below an objective standard of reasonableness, and, second, that he was prejudiced by those deficiencies.[72]

To satisfy *Strickland*'s first prong, a defendant bears the burden of showing

---

[69] Although the physics involved do not bear exhaustive discussion, Gordon's argument that the officers must have been lying because it is "inconceivable" that the drugs would remain in his underwear without being knotted around his genitals (given his intervening movements) is unavailing.  At trial, Trooper Matthew Long testified that Gordon was "wearing a very formfitting type of pant."  D.I. 76, B66:23–27:1.  Albeit not before the Court at the suppression hearing, this testimony illustrates why Gordon's exclusive focus on the fit of his underwear is too narrow a view.  The drugs' ability to shift and fall from Gordon's underwear was limited by the pants layered over them.

[70] *Cooke v. State*, -- A.3d --, 2025 WL 16395, at *23 (Del. Jan. 2, 2025) (citing *Duross v. State*, 494 A.2d 1265, 1269 (Del. 1985); *Ploof v. State*, 75 A.3d 811, 821 (Del. 2013)).

[71] 466 U.S. 668 (1984).

[72] *Neal v. State*, 80 A.3d 935, 941–42 (Del. 2013).

"that no reasonable lawyer would have conducted the defense as his lawyer did."[73] Courts employ a "strong presumption that counsel's representation was reasonable,"[74] and will not "'second-guess reasonable . . . tactics' engaged by trial counsel."[75]

Defendants also bear a burden under *Strickland*'s second prong. "To demonstrate prejudice caused by counsel's ineffectiveness, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[76] For the Court to find prejudice, "Counsel's error must have been 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"[77]

### 1. Although Trial Counsel's Failure To Raise *McDonald v. State* Was Likely Deficient Performance, Any Prejudice Gordon Suffered Does Not Entitle Him To A New Trial.

Gordon has satisfied *Strickland*'s first prong on the *McDonald* issue. Trial Counsel states that she discussed *McDonald* with Defendant "prior to presenting the Motion to Suppress, and counsel set forth the reasons why, under the circumstances of Gordon's case, she did not believe that the four corners test was applicable."[78] Trial Counsel's representation in this respect is difficult to accept. On reargument (apparently prompted by Gordon's raising *McDonald* to Trial Counsel), Trial Counsel failed to make any presentation to the Court, claiming that she did not fully understand the points her client wanted her to argue.[79] Although *Strickland* and its progeny do not "deem . . . counsel ineffective for not pursuing the best or most

---

[73] *State v. Thomas*, 2024 WL 5117117, at *6 (Del. Super. Dec. 16, 2024) (quoting *Green v. State*, 238 A.3d 160, 174 (Del. 2020)).
[74] *Id.* (citing *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996)).
[75] *Id.* (quoting *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Apr. 1, 2002)).
[76] *Ray v. State*, 280 A.3d 627, 642 (Del. 2022) (en banc) (quoting *Green*, 238 A.3d at 174).
[77] *Neal*, 80 A.3d at 942 (quoting *Strickland*, 466 U.S. at 687).
[78] D.I. 118, 1.
[79] D.I. 69, 3:11–20.

successful strategy," counsel's decisions must "be informed by a thorough investigation of law and facts."[80] Since Gordon raised *McDonald* to Trial Counsel both prior to the motion to suppress and prior to the motion for reargument—and given Trial Counsel's representations to the Court evidencing a lack of preparation rather than a tactical or reasoned decision—the Court concludes that her performance was likely not informed by such an investigation and thus objectively unreasonable.[81]

Even if Trial Counsel truly believed *McDonald* inapplicable after thorough investigation, her judgment on that issue would have been erroneous. As the Supreme Court held on appeal, *McDonald* was not only applicable but dispositive of the motion to suppress, and by extension Defendant's case. The Commissioner was incorrect in finding[82] that this Court may not have reached that conclusion. The Supreme Court's finding on that issue is the law of the case, and this Court is therefore obligated to apply it faithfully.[83]

*Strickland*'s second prong is difficult to apply to the facts of this case. Given the centrality of the *McDonald* issue, it would be intuitive to conclude that Gordon was prejudiced by Trial Counsel's failure to raise it. The State argues that, notwithstanding the Supreme Court's conclusion that the evidence would have been suppressed, Gordon was not prejudiced, since the State could have appealed the Court's decision and the Supreme Court would have ultimately overturned

---

[80] *State v. Peters*, 283 A.3d at 687 (Del. Super. 2022) (citing *Burns v. State*, 76 A.3d 780, 788 (Del. 2013); *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014)).

[81] *Cf. Kellam v. State*, -- A.3d --, 2025 WL 1375495, at *13 (Del. May 13, 2025) (en banc) (counsel's failure to notice and object to outdated jury instruction would have supported ineffective-assistance claim if defendant had suffered prejudice because it was not the product of strategic consideration); *accord Ray*, 280 A.3d at 641.

[82] *See* D.I. 135, 19–21.

[83] *Hoskins*, 102 A.3d at 729 ("[I]ssues resolved by this Court on appeal bind the trial court on remand[.]" (quoting *Gannett Co. v. Kanaga*, 750 A.2d 1178, 1198 (Del. 2000) (Chandler, C., dissenting))).

*McDonald*, just as it did.[84]  Although the state is right that it *could* have appealed, Gordon is not required to prove that the outcome of his case would *certainly* have been different.  He need only show "a reasonable probability," or a "probability sufficient to undermine confidence in the outcome."[85]  As the Delaware Supreme Court has explained, this is "a standard lower than 'more likely than not.'"[86]  It is, in the Court's view, unlikely that the State would have appealed a suppression order resting on an *en banc* Supreme Court decision more than a decade old in the hope that the Court would reverse itself.  Thus, Gordon has the better argument on this point.

Nonetheless, the Court concludes that Gordon was not prejudiced in a way that would justify a new trial—the remedy Gordon seeks for such prejudice.[87]  Trial Counsel's error did not deprive Gordon of a fair trial, which is to say, one whose result was reliable.  Thus, Gordon did not suffer *Strickland* prejudice.[88]  Since any new trial would proceed on the same terms as his prior one—with evidence that the Supreme Court has now concluded need not be suppressed—a new trial would not be any more reliable an indicator of Gordon's guilt than the trial he was already afforded.  In other words, Defendant already had a fair trial because the evidence admitted against him was admissible under the proper understanding of the Delaware and United States constitutions.

Even if Gordon were prejudiced, the remedy he seeks is not appropriate.  On retrial, this Court would not be required to suppress the evidence *McDonald* would have barred.  This case presents an issue of first impression:  if a trial court

---

[84] D.I. 125, 1.

[85] *Green*, 238 A.3d at 174 (quoting *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (en banc)).

[86] *Id.* (quoting *Starling*, 130 A.3d at 325).

[87] D.I. 136, 6 ("To provide Gordon with a fair remedy for his claim, the case should not only be reversed and remanded for a new trial but reversed with the instruction that [Gordon's original] motion to suppress be granted.").

[88] *See Neal*, 80 A.3d at 942 (quoting *Strickland*, 466 U.S. at 687).

erroneously fails to apply binding precedent, and that precedent is overturned on appeal, must any retrial apply the law extant at the time of the error, or the law in effect at the time of the retrial? Defendant cites no authority for the premise that the new trial he seeks must—or should—proceed as though *McDonald* were still the law of this state. However, the highest courts of at least two other states have held that retrials proceed on a "clean slate."[89] This Court finds that body of law persuasive. Therefore, this Court's failure to apply *McDonald* does not bind it to apply that defunct precedent in any future trial proceedings. Rather, the Supreme Court's decision overturning *McDonald* requires this Court to reject any suppression motion relying on that case.

Thus, a new trial would not correct for any earlier evidentiary error of this Court, but would merely give Defendant a second bite at the apple—a new trial with the same evidence as the old trial. A trial on those terms would be not only an unjust windfall to Gordon (undermining the public interest in the finality of convictions) but also futile. Whether one conceptualizes the issue with Gordon's motion as a lack of prejudice or as the absence of an appropriate remedy, therefore, the Court must reject his ineffective-assistance claim on the *McDonald* issue.

---

[89] *See Thomas v. State*, 902 S.E.2d 566, 570 (Ga. 2024) (trial court did not err in admitting evidence that it had previously suppressed when new trial was granted for other reasons); *Zadeh v. State*, 299 A.3d 49, 66 (Md. 2023) ("At a new trial, a defendant may always file a new motion to suppress, and if the State opposes it, a defendant, in appropriate circumstances, may avail himself of 'the law of the case' principles. *Otherwise,* [i.e., when the 'law of the case' does not bind the court,] *it is a new motion, new hearing, new trial, and new decision.*" (quoting *Odum v. State*, 846 A.2d 445, 461 (Md. Ct. Spec. App. 2004)) (emphasis in original)); *see also Estate of Krieger v. Amguard Ins. Co.*, 2021 WL 733442, at *1 (Del. Super. Feb. 25, 2021) (holding that a party was not precluded from objecting to evidence for the first time on retrial because "when the Court grants a new trial, it in large part 'wipes the slate clean.'" (citing *State v. Roberts*, 1985 WL 444602, at *2 (Del. Com. Pl. Nov. 21, 1985))).

**2. Neither Trial Nor Appellate Counsel Was Ineffective For Failing To Raise The Prosecutor's Alleged Improper Comments On The Conspiracy Charge.**

    **i.    Trial Counsel's Decision Not To Object To The State's Closing Was Objectively Reasonable And Did Not Prejudice Gordon.**

Gordon complains that Trial Counsel did not object to two comments the State made about the conspiracy charge on closing. Neither complaint supports Gordon's motion.

The first comment at issue is the State's claim that Gordon admitted to conspiracy to commit aggravated possession, an uncharged offense.[90] Gordon rightly notes that he was indicted for conspiracy to commit drug dealing, rather than conspiracy to commit aggravated possession. He goes further, however, in arguing that the prosecutor's comment was not just irrelevant but prejudicial because, in conjunction with a purportedly-vague jury instruction, it could have confused the jury into returning a guilty count for an unindicted offense.[91]

The second comment Gordon complains of is the following:

> But there's another way, another way, to consider the distribution because the jury instructions say to, in the definition of deliver, to deliver to one or more people. This is drug paraphernalia to allow delivery of this heroin to many people. But think back to the defendant's testimony. The defendant said it was Mr. Smith's and he just shoved it in his pants to help him out, not that Mr. Smith was giving him the heroin, this was gonna be his forever. So even if that were the case, he intended to give it back to Mr. Smith. It's a lot of heroin. Right?[92]

Gordon contends that this argument could have confused the jury into returning a compound verdict, i.e., that Gordon conspired to deal drugs *either* to third parties,

---

[90] D.I. 71, C67:11–68:18, C74:5–8.
[91] D.I. 136, 9.
[92] D.I. 71, C73:17–74:4.

19

*or* back to Mr. Smith—which Gordon asserts is a legal impossibility.[93]

Gordon's claims concerning the prosecutor's comments fail on both *Strickland* prongs. Trial Counsel's decision not to object was a reasonable strategic choice that the Court will not second-guess. Even if Trial Counsel's decision were unreasonable, though, Gordon was not prejudiced, as the jury instructions presumptively cured any confusion from the prosecutor's extraneous reference to an alleged conspiracy to commit aggravated possession, and the prosecutor did not argue that returning Smith's drugs to him would be drug dealing.

To show that Trial Counsel's performance was objectively unreasonable, Gordon "must do more than 'merely . . . show[] that his counsel could have conducted his defense more effectively.'"[94] An attorney's informed strategic choice is "virtually unchallengeable."[95] The Court must be "'highly deferential' to trial counsel's decisions because it is 'all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'"[96]

In this case, Trial Counsel has stated that her decision not to object to the State's allegedly prejudicial closing was strategic. She believed that the jury was not paying close attention to the prosecutor's argument and that objecting would only draw attention to the prosecutor's comments.[97] Reasonable minds may differ on whether Trial Counsel's choice was the best one she could have made. However, "it is not *per se* unreasonable for defense counsel to withhold an objection, even in the face of serious prosecutorial misconduct."[98] "[T]he ultimate goal of

---

[93] D.I. 136, 10.

[94] *Kellam*, 2025 WL 1375495, at *8 (quoting *Cooke*, 2025 WL 16395, at *24).

[95] *Id.* (quoting *Cooke*, 2025 WL 16395, at *24).

[96] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[97] D.I. 142, 1.

[98] *Ayers v. State*, 802 A.2d 278, 283 (Del. 2002).

representation is not to win an objection, but to prevail when the verdict is read[.]"[99] A reasonable attorney could have concluded, as did Trial Counsel, that an objection, even if successful and accompanied by a curative instruction from the trial judge, would be counterproductive because it would shine a light on the prosecutor's comments.

Furthermore, even if Trial Counsel's decision not to object were objectively unreasonable, Gordon was not prejudiced by any deficiency. As to the "conspiracy to commit aggravated possession" comment, both the indictment (which the jury was provided) and the jury instruction Gordon calls "vague" made clear that the conspiracy with which Gordon was charged was conspiracy to commit drug dealing. The instruction read, in pertinent part:

> In order to find Defendant guilty of Conspiracy in the Second Degree, you must find the State has proved the following . . . elements beyond a reasonable doubt: (1) Defendant agreed to aid another person *in the planning or commission of the felony of drug dealing* or an attempt to commit that felony[.][100]

"Prejudicial error will normally be cured by the trial judge's instructions to the jury."[101] Such is the case here. "Juries are presumed to follow the trial judge's instructions."[102] The jury was appropriately instructed to convict Gordon only if they found him guilty of conspiracy to commit drug dealing—and, by negative implication, not to do so if he engaged only in conspiracy to commit aggravated possession. The prosecutor's single comment could not have created such confusion that the jury would ignore a clear instruction from the Court.

As to the second comment, regarding Gordon's intent to "give [the heroin] back" to Smith, assuming without deciding that Gordon is correct that returning the

---

[99] *Id.* (citing *Strickland*, 466 U.S. at 689).
[100] D.I. 51, 11 (emphasis supplied).
[101] *Trala v. State*, 244 A.3d 989, 997 (Del. 2020) (quoting *Dawson*, 637 A.2d at 62).
[102] *Revel v. State*, 956 A.2d 23, 27 (Del. 2008) (collecting cases).

21

heroin would not have been "dealing" as a matter of law, and that an uncorrected argument to the contrary could result in an impermissible compound verdict, Gordon's argument still fails because the State made no such argument. The prosecutor's comments on closing must be understood in full context. Gordon claims that the prosecutor's reference to delivery to "one or more people" and her comment that Gordon always "intended to give [the heroin] back to Mr. Smith" could have led the jury to conclude that doing so—i.e., simply giving the heroin to Smith—would have been drug dealing. The Court finds this argument unpersuasive.

Throughout her closing, the prosecutor stressed that Gordon, contrary to his testimony, must have known that Smith was dealing drugs given the heroin, marijuana, and packaging materials in the car. She repeatedly emphasized that it was a "lot of heroin" (i.e., obviously not for Smith's personal use) and that Gordon must have seen the packaging materials (indicia of intent to distribute) given the size of the car. In other words, the State's theory was that Gordon hid, and planned to return, the heroin to Smith so that Smith could deal it, knowing and intending that Smith would do so. As the prosecutor noted, Gordon "said it was Mr. Smith's and he just shoved it in his pants to help him out, not that Mr. Smith was giving him the heroin, this was gonna be his forever."[103] Such an understanding of the dynamic between Gordon and Smith is inconsistent with the view that Gordon intended to "deal" the drugs back to Smith, their owner throughout the interaction.

### ii. Gordon Has Failed to Demonstrate That Appellate Counsel Was Ineffective, Because He Has Not Shown That His Claim About The State's Closing Was Clearly Stronger Than The Issues Raised On Direct Appeal.

As the Delaware Supreme Court has explained, "[a]lthough a defendant is entitled to effective assistance of counsel during an appeal, this does not mean that

---

[103] D.I. 71, C73:22–74:2.

his attorney must raise every nonfrivolous issue. A defendant can only show that his appellate counsel ineffectively represented him where the attorney omits issues that are clearly stronger than those the attorney presented."[104] As already stated, Gordon's *McDonald* argument on appeal was a strong one. Gordon acknowledges that "there was every reason to believe [the *McDonald*] issue would be successful on appeal."[105] Had the Supreme Court not overturned *McDonald*, Gordon would almost certainly have prevailed on appeal for the same reason that the Supreme Court concluded he would have prevailed on a properly-argued suppression motion before this Court. In short, Gordon's prosecutorial misconduct argument was not "clearly stronger" than the *McDonald* argument. For the reasons given earlier in this opinion, the opposite was true. Thus, Gordon's claim of ineffective assistance of counsel for failing to appeal the prosecutor's arguments is meritless.

### 3. Trial Counsel's Closing Argument Did Not Render Her Assistance of Gordon Ineffective, As It Implicitly Addressed The Conspiracy Charge.

Gordon complains that Trial Counsel's closing argument did not directly address the Conspiracy in the Second Degree charge. Gordon asserts that "[t]rial counsel is required to defend against all charges, no matter the severity, unless a defendant has agreed to a strategy conceding guilt on lesser offenses."[106] Gordon cites no authority for this proposition, but even if he is correct on this point, it does not follow that Trial Counsel's closing rendered her ineffective. Whether trial counsel is ineffective does not turn on the Court's evaluation of any particular aspect of the representation in isolation, but rather the representation viewed as a whole.[107]

---

[104] *Ploof*, 75 A.3d at 831–32 (citing *Jones v. Barnes*, 463 U.S. 754, 754 (1983); *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2002)).
[105] D.I. 136, 7.
[106] D.I. 136, 12.
[107] *See Cooke*, 2025 WL 16395, at *37 ("[W]e must evaluate each of defense counsel's decisions in light of defense counsel's earlier, reasonable choices[.]").

Even if Trial Counsel did nothing to touch on the conspiracy charge in her closing, it would not follow that she failed to "defend against" that charge, or that she "conceded guilt" of that offense. However, this point is of little moment, because Trial Counsel's closing *did* address the Conspiracy charge, albeit indirectly.

The Court is not convinced that no reasonable attorney would have delivered the closing that Trial Counsel did. A closing argument is not ineffective merely because it is brief.[108] Although Trial Counsel did not explicitly address the conspiracy charge, the story she told—that Gordon was an innocent party unaware of the drugs in the Mazda until Trooper Holl activated his lights, and that Gordon secreted the heroin out of panic, rather than any broader criminal design—was incompatible with a conviction on the conspiracy charge. The jury was instructed to convict Gordon only if he acted intentionally, and was informed that "intent" required that it be Gordon's "conscious objective or purpose to engage in the conspiracy."[109] Another element of the offense, per the instructions, was that Gordon "agreed to aid another person in the planning or commission of the felony of drug dealing or an attempt to commit that felony[.]"[110] If the jury believed the story Trial Counsel told on closing, it would surely have acquitted Gordon because he lacked the requisite *mens rea* and, by hiding the heroin, did not "agree to aid" Smith in drug dealing, but merely acted out of self-preservation.

Trial Counsel's strategy was reasonable in light of the evidence against Gordon. It is worth noting that Trial Counsel won Gordon an acquittal on two drug-related charges even though he was found in possession of a large quantity of heroin. One of the charges of which Gordon was acquitted—Possession of Drug Paraphernalia—also went unaddressed in Trial Counsel's closing. Gordon's

---

[108] *Flamer v. State*, 585 A.2d 736, 757 (Del. 1990).
[109] D.I. 51, 11.
[110] *Id.*

24

argument gives the jury too little credit.  The evidence the jury evaluated, rather than any omitted argument, resulted in Gordon's convictions, just as it did his acquittals.

### 4. Neither Trial Counsel Nor Appellate Counsel Was Ineffective For Failing To Challenge The Application Of The Collective Knowledge Doctrine In The Way Gordon Contends, As Such a Challenge Would Have Been Futile.

On appeal, the Supreme Court found that this Court's bench ruling correctly applied the collective knowledge doctrine, and that Trooper Holl therefore had reasonable articulable suspicion to pull over the Mazda in reliance on the Macauleys' investigation.[111]  To avoid making the same arguments the Court rejected on appeal, Gordon now contends that Trial Counsel was ineffective for failing to challenge the application of the doctrine following this Court's ruling, and that Appellate Counsel was ineffective in failing to make a specific argument about the application of the doctrine.  Specifically, Gordon contends that the collective knowledge doctrine is inapplicable because Holl believed he needed to develop his own "probable cause" for the stop—which, Gordon reasons, shows that the Macauleys' knowledge was not communicated to him.

Gordon's contentions are unavailing.  Appellate Counsel was not ineffective for the reasons stated previously in this opinion:  Gordon's strongest argument was the *McDonald* issue.  Appellate Counsel would not have been ineffective even if she failed to address the collective knowledge issue at all.  Even if both Trial Counsel and Appellate Counsel were obligated to fully explore the collective knowledge issue, however, Gordon was not prejudiced, because his collective knowledge argument lacks merit.  "Counsel can never be deemed *Strickland* ineffective for failing to make an otherwise futile or inconsequential argument."[112]

---

[111] *Gordon*, 245 A.3d at 512 ("[T]he Superior Court, having found that both Detectives Macauley 'communicated with Trooper Holl about what they had learned and observed' by way of the wiretap and related surveillance and asked for Holl's assistance, correctly applied the doctrine.").

[112] *Thomas*, 2024 WL 5117117, at *7 (citing *Peters*, 238 A.3d at 680; *State v. Prince*, 2022 WL

Had Trial Counsel argued the collective knowledge issues Defendant now raises, it would have been a futile exercise. On direct appeal, the Supreme Court stated that "Trooper Holl understood Detective Thomas Macauley's request for assistance to mean that he should detain the vehicle, preferably in a way that would not blow the investigation's cover."[113] Despite Defendant's persistent arguments to the contrary, this is the most reasonable understanding of Holl's testimony. Simply because Holl believed he had been instructed to pull Defendant's vehicle over on the basis of independently-developed "probable cause" does not mean that the officers did not collectively have reasonable suspicion to justify the stop, nor that Holl had not been instructed to carry out the stop.

While Gordon may feel that the Court should find Trooper Holl's testimony that he was informed of the true reason for the stop incredible, the Court need not address that question, because any factual dispute is irrelevant to disposition of Defendant's motion. As the Supreme Court held in *State v. Cooley*, "[t]he arresting officer need not be apprised of the underlying circumstances which give rise to a conclusion of probable cause," or, here, reasonable suspicion.[114] "Instead, he can act in the belief that his fellow officer's judgment is correct."[115] It is clear that Thomas Macauley and Holl both understood that reasonable suspicion had already been developed and that Holl's independent "probable cause" was a pretext for a stop that was already legally justified. The need for a pretext was merely a function of the sensitivity of the underlying investigation.

Before the Commissioner, Gordon argued, citing this Court's decision in *State*

---

211704, at *7 (Del. Super. Jan. 24, 2022)).

[113] *Gordon*, 245 A.3d at 512.

[114] 457 A.2d 352, 355 (Del. 1983) (citation omitted).

[115] *Id.* (citing *Whitely v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971); *Com. v. Kenney*, 297 A.2d 794, 796 (Pa. 1972)).

*v. Holmes*,[116] that (notwithstanding the binding caselaw just cited) more knowledge exchange than a mere request to stop the Mazda was necessary to give Trooper Holl reasonable articulable suspicion.[117]  As the Commissioner correctly noted,[118] Gordon misunderstands *Holmes*.  *Holmes* was decided in the context of a motion to suppress a warrantless arrest and made clear, applying *Cooley*, that *either* personal knowledge sufficient to support a finding of probable cause *or* direction to conduct an arrest by an officer who had such knowledge would have led the Court to deny the defendant's motion.[119]  The State failed to meet its burden in *Holmes* because the officer who possessed the knowledge supporting probable cause neither shared it with the arresting officer nor instructed that officer to conduct the arrest.[120]  Because, in *Holmes*, the officer with such knowledge "adamantly denied" that he directed the stop or subsequent arrest and communicated with other officers only to report his location, his knowledge could not be imputed to the arresting officers.[121]  In other words, the *Holmes* Court concluded that only the collective knowledge of the officers *involved in* the arrest could be used to establish probable cause.[122]

---

[116] 2015 WL 5168374 (Del. Super. Sept. 3, 2015).
[117] D.I. 113, 41–44.
[118] D.I. 135, 36–39.
[119] *Holmes*, 2015 WL 5168374, at *5 (Del. Super. Sept. 3, 2015) ("[T]he State can satisfy its burden in one of two ways.  The State can present evidence that the arresting officers themselves possessed the requisite knowledge to establish probable cause, or by introducing evidence that a fellow police officer with the requisite knowledge communicated that information to, and/or directed the officers on scene to make the arrest.").
[120] *Id.* at *4 ("Detective Hurd had personal knowledge sufficient to support a finding of probable cause which would have allowed him, or someone at his direction, to arrest the Defendant without a warrant," but that knowledge "was never relayed to his fellow officers.").
[121] *Id.* at *6.
[122] *Id.* at *4 ("[I]f 'no officer *connected to the arrest* knows the facts which might justify it . . . no officer exercises the judgment required as a substitute for probable cause.' . . . Detective Hurd did not participate in the stop or subsequent arrest of the Defendant." (quoting *Cooley*, 457 A.2d at 355) (emphasis in original); *see also id.* at *5 ("The [*Cooley*] Court reasoned that the collective knowledge doctrine appropriately applied in situations where information held by several officers is actually (not constructively) pooled to make a probable cause determination.").

Since, in the instant case, Thomas Macauley instructed Holl to conduct the stop (i.e., was involved therein), *Holmes* is simply inapposite.

In sum, Defendant's collective knowledge argument is meritless. The Court will not, therefore, fault Trial Counsel for failing to raise a futile argument, nor Appellate Counsel for not asserting the specific arguments that Gordon now makes.

## III. CONCLUSION

For the foregoing reasons, Gordon's motion for postconviction relief is **DENIED.**

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/tls

oc:     Prothonotary

cc:     Counsel of Record